UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CODY PRIES,

    Plaintiff,

v.

CONTRA COSTA COUNTY, PAUL MANAUT, ELIZABETH HOLLANDBERRY, and DOES 1–50,

    Defendants.

No. C 21-04890 WHA

**ORDER RE MOTION TO DISMISS**

## INTRODUCTION

In this Section 1983 action, plaintiff asserts that defendants violated the federal constitution and California statutes by denying him medical care while he was in custody. Defendants move to dismiss. For the reasons that follow, the motion to dismiss is **GRANTED IN PART AND DENIED IN PART**.

## STATEMENT

Plaintiff Cody Pries was arrested on May 10, 2020. During that arrest, a police dog bit plaintiff on his upper right back, which created a wound. The police took plaintiff to have his wounds cleaned at John Muir Hospital, and he was subsequently detained at West County Detention Facility. During the following weeks of detention, plaintiff's dog-bite wound developed an infection. Plaintiff alleges that West County employees, including defendants Dr. Elizabeth Hollandberry and nurse practitioner Paul Manaut, ignored his requests for medical

treatment of his deteriorating infection. Plaintiff alleges that Dr. Hollandberry instead discontinued plaintiff's wound dressing changes within days of his detention at West County, which caused the infection to worsen. According to plaintiff's medical records, West County staff collected a sample to test for a Methicillin-resistant Staphylococcus aureus (MRSA) infection on May 27, 2020. On May 29, 2020, a visiting doctor at West County lifted plaintiff's shirt and saw the infection, upon which the doctor ordered plaintiff's immediate transfer to Contra Costa Regional Medical Center. Plaintiff was diagnosed with and treated for an MRSA infection that same day at CCRMC. Treatment involved medical personnel guiding scissors deep into plaintiff's body, draining the infection, and sewing the wound back up. Our complaint alleges that the treatment procedure at CCRMC caused plaintiff great pain and suffering, that for a month after the procedure his infection had to be drained on a daily basis, that he has permanent scars, and that he has developed a vulnerability to infections, which limits his abilities at work (Second Am. Compl. ¶¶ 12–24).

Plaintiff asserts three claims: constitutional violation pursuant to 42 U.S.C. §1983, common law tort of negligence, and a Bane Act violation under the California Civil Code. Defendants Contra Costa County and Dr. Hollandberry move to dismiss all claims, as well as all Doe defendants and defendant Nurse Manaut for failure to serve.[*] This order follows full briefing and oral argument.

## ANALYSIS

### 1. OUTRIGHT DISMISSAL OF PARTIES.

Under FRCP Rule 4(m), service must be made upon a defendant within 90 days of filing of the complaint, otherwise the district court has authority to dismiss the action as to that defendant. Any dismissal under Rule 4(m) is without prejudice to plaintiff's right to re-file. If plaintiff fails to serve defendants within this time frame, district courts perform a two-step analysis: (1) if plaintiff can show good cause for defective service, then the district court must

---

[*] The parties do not brief the negligence claim, presumably because the legal standard for the Section 1983 claim goes beyond negligence. Because this order finds that plaintiff has sufficiently stated a Section 1983 claim, it likewise does not separately address the negligence claim.

extend the time period, and (2) if there is no good cause for the delay, the district court has discretion to dismiss or to extend the time for service. *In re Sheehan*, 253 F.3d 507, 512 (9th Cir. 2001). "District courts have broad discretion to extend time for service under Rule 4(m)." *Efaw v. Williams*, 473 F.3d 1038, 1041 (9th Cir. 2007).

### A.   Paul Manaut.

Magistrate Judge Laurel Beeler's scheduling order set the deadline for seeking leave to add new parties or amend pleadings as January 7, 2022 (Dkt. No. 63). Deadline notwithstanding, Judge Beeler allowed plaintiff to file a second amended complaint adding our two West County employees, which was filed on July 20, 2022. Discovery had not closed at the time the new defendants were added. Process server records provided by plaintiff show that the first attempt to serve Nurse Manaut was not until October 13, 2022, five days before the mandated window for service under FRCP 4(m) (Bulgucheva Decl. 8). This was also a full month after Judge Beeler had admonished the parties to provide an update on service, without which the case could not proceed (Dkt. No. 106). Plaintiff states that he "will" be requesting service through publication (Opp. 9), but until that motion is received this Court will not consider alternative service. The standard for service through publication requires prior reasonable diligence, not shown here.

Nevertheless, "[g]ood cause generally means plaintiff attempted service but did not complete it." *Television Signal Corp. v. City & Cnty. of S.F.*, 193 F.R.D. 645, 646 (N.D. Cal. 2000) (Judge Vaughn R. Walker); *cf. Wei v. Hawaii*, 763 F.2d 370, 372 (9th Cir. 1985). Plaintiff here has attempted service multiple times on Contra Costa County health facilities, albeit only to eventually discover that Nurse Manaut no longer works at Contra Costa Medical Center. At the hearing for this motion to dismiss, counsel for defendant said he would provide plaintiff's counsel with an address for service before leaving the courtroom. Plaintiff has until **FEBRUARY 24, 2023**, to effectuate service on Nurse Manaut, or he will be dismissed.

### B.   Doe Defendants.

The scheduling order controls the subsequent course of the action unless modified by the court upon a showing of "good cause." *See Zivkovic v. Southern Calif. Edison Co.*, 302

3

1   F.3d 1080, 1087–88 (9th Cir.2002). Unless a court order is obtained permitting late filing,
2   motions filed after deadlines set in a scheduling order are untimely and may be denied solely
3   on this ground. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 608–09 (9th Cir.1992).

4   It is now far past the deadline for adding parties based on our existing scheduling order,
5   and fact discovery closed on August 31, 2022 (Dkt. No. 63). Moreover, in moving to file a
6   second amended complaint, plaintiff's stated basis was that he "ha[d] ascertained the identities
7   of the Contra Costa County's employees who failed to provide medical care to Plaintiff while
8   he was in custody at the West County Detention Facility" (Dkt. No. 81 at 3–4). Judge Beeler
9   granted plaintiff leave to amend the complaint. At this point, therefore, no good cause exists to
10  add further West County employees who have yet to be identified. Furthermore, Antioch and
11  Brentwood police officers and those municipalities have been dismissed from this action
12  pursuant to settlements in spring of 2022, which constitute the remaining bases for outstanding
13  Doe defendants. Ultimately, a district court may dismiss Doe defendants sua sponte. *See*
14  *Craig v. United States*, 413 F.2d 854, 856 (9th Cir. 1969). Doe Defendants 1–50 are hereby
15  **DISMISSED**.

16  **2.   SUBSTANTIVE CLAIMS.**

17  To survive a motion to dismiss, plaintiff's complaint must plead "enough facts to state a
18  claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570
19  (2007). A claim has facial plausibility when the party asserting it pleads factual content that
20  allows the district court to draw the reasonable inference that the defendant is liable for the
21  misconduct alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While allegations in the
22  complaint are presumed true, conclusory allegations or "formulaic recitation of the elements" of
23  a claim are not entitled to such a presumption. *Id.* at 681.

24  **A.   Section 1983 Claim for Constitutional Violation.**

25  Pre-conviction detainees may sue jail officials for injuries suffered while in custody
26  under the Fourteenth Amendment's Due Process Clause. *Castro v. Cnty. of L.A.*, 833 F.3d
27  1060, 1067–68 (9th Cir. 2016) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)). To sustain
28  such a claim, plaintiff must show that the jail officials acted with "deliberate indifference,"

4

which is an objective standard. *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018).

Plaintiff's claim is that defendants deliberately ignored his worsening infection which created a serious medical risk, eventually resulting in his predicament of being treated for an MRSA infection in the emergency room. Defendants' argument that the allegations fail to establish they knew he specifically had MRSA is therefore inapposite. The core of our claim here is that "the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious." *Ibid.* Plaintiff must show "more than negligence but less than subjective intent—something akin to reckless disregard." *Id.* (quoting *Castro*, 833 F.3d at 1071).

Our complaint alleges that plaintiff "showed [defendants] that the infection was visibly getting worse, advised that he could barely walk and required a hospital bed," and that these actions were ignored (Second Am. Compl. ¶ 17). The fact that plaintiff was provided *some* medical treatment — including an eventual test for an MRSA infection — does not contradict those allegations. *See Lopez v. Smith*, 203 F.3d 1122, 1132 (9th Cir. 2000) ("A prisoner need not prove that he was completely denied medical care."). Instead, our complaint further alleges that "Dr. Hollandberry discontinued Plaintiff's wound dressing changes within days" of his weeks-long stay at West County, did nothing to treat his infection, and that a visiting doctor immediately sent plaintiff to the emergency room after a visual inspection upon lifting his shirt (Second Am. Compl. ¶¶ 18–20). These allegations, taken as true, sufficiently establish a claim for deliberate indifference, and not merely a disagreement with doctors' testing, diagnoses, and treatment decisions as defendants argue (Reply 2). In short, our complaint plausibly alleges that a reasonable official would have treated plaintiff's worsening infection given the obvious risk that eventually manifested, and defendants did not.

Nor does qualified immunity bar plaintiff's claim at this stage. To overcome defendants' affirmative defense of qualified immunity, plaintiff must show that "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly

5

established at the time." *Nunes v. Arata, Swingle, Van Egmond & Goodwin (PLC)*, 983 F.3d 1108, 1112 (9th Cir. 2020). The foregoing analysis satisfies the first prong.

As to the second prong, "[t]hough a court must not define a right at a high level of generality, . . . an official's 'legal duty need not be litigated and then established disease by disease or injury by injury,'" *In re CIM-SQ Transfer Cases*, No. 22-MC-80066, 2022 WL 2789808, at *9 (N.D. Cal. July 15, 2022) (Judge William H. Orrick) (citations omitted) (collecting cases denying qualified immunity at the motion to dismiss stage). There is no dispute that detainees have a right to medical treatment under the Constitution. Rather, defendants argue that there is no constitutional right specifically to obtain treatment for an MRSA infection (Reply 3). That goes too far. "It is not necessary to have a case involving a heart attack, a case involving appendicitis, or a case involving a bowel obstruction for a § 1983 claim based on one of those conditions to survive qualified immunity." *Russell v. Lumitap*, 31 F.4th 729, 737–38 (9th Cir. 2022). "A medical need is serious if 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" *Peralta v. Dillard*, 744 F.3d 1076, 1086 (9th Cir. 2014) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). "The contours of the right required only that the individual defendants take reasonable measures to mitigate the substantial risk." *Castro*, 833 F.3d at 1067. The law was clear on this obligation to provide medical care, and our complaint alleges that defendants failed to do so. Defendants are not entitled to qualified immunity at this stage.

### B. California Bane Act.

The Bane Act punishes any:

> "person or persons, whether or not acting under color of law, [who] interferes by threat, intimidation, or coercion, or attempts to interfere by threat, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state."

Cal. Civ. Code § 52.1(a). The Bane Act also provides relief for anyone whose rights are harmed in this way. Cal. Civ. Code § 52.1(b). To state a claim under the Bane Act, plaintiff must allege "(1) interference with or attempted interference with a state or federal

6

constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation, or coercion." *Allen v. City of Sacramento*, 183 Cal. Rptr. 3d 654, 676 (Cal. Ct. App. 2015).

There is some jurisprudential conflict over whether "threats, intimidation, or coercion" is a distinct requirement that must be separately proven under the Bane Act. *See Watkins v. City of Oakland*, No. 17-cv-06002, 2018 WL 574906, at *9–13 (N.D. Cal. Jan. 26, 2018) (Judge Joseph C. Spero) (discussing in depth the history and landscape of the Bane Act's "coercion requirement"). Divergence stems from the fact that while "'[n]othing in the text of the statute requires that the offending "threat, intimidation or coercion" be "independent" from the constitutional violation alleged' . . . the Bane Act imposes an additional requirement beyond a finding of a constitutional violation." *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018) (quoting *Cornell v. City & Cnty. of S.F.*, 225 Cal. Rptr. 3d 356, 382 (Cal. Ct. App. 2017)). Namely, the requirement is that "the underlying violation of rights is sufficiently egregious to warrant enhanced statutory remedies, beyond tort relief." *Id.* (quoting *Cornell*, 225 Cal. Rptr. 3d at 383).

In the context of our constitutional claim requiring deliberate indifference beyond mere negligence, the inquiries coalesce. *See Shoar v. Cnty. of Santa Clara*, No. C 22-00799 WHA, 2022 WL 10177673, at *3 (N.D. Cal. Oct. 17, 2022) ("[D]eliberate indifference to serious medical needs in a prison is much closer to intentional conduct rather than the unintentional conduct contemplated in [contrary cases]."). Defendants do not disagree: "defendants' position is that a Bane Act claim has not been pled because the requisite specific intent (or deliberate indifference), necessary to the claim has not be [sic] alleged" (Reply 4). Plaintiff sufficiently pleads a Bane Act claim given the sufficiency of his Section 1983 claim.

# CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is **GRANTED** as to all Doe defendants, and **DENIED** as to all of plaintiff's claims and defendant Paul Manaut pending service of process. The answer is due in **FOURTEEN CALENDAR DAYS**.

**IT IS SO ORDERED.**

Dated: February 10, 2023.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE